## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SALT WATER SEAFOOD, INC.
1100 MAINE AVENUE, S.W.
WASHINGTON, D.C. 20024,

        Plaintiff,

v.

UNITED STATES OF AMERICA
U.S. DEPARTMENT OF JUSTICE
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20530,

and

UNITED STATES DEP'T OF AGRICULTURE,
1400 JEFFERSON DRIVE, S.W.
WASHIGTON DC 20024

        Defendants.

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL AGENCY DECISION OF USDA, FOOD & NUTRITION SERVICE AND FOR VIOLATION OF FOIA**

**CIV. NO.**

## COMPLAINT

Plaintiff Salt Water Seafood, Inc., 1100 Maine Avenue, S.W., Washington, DC 20024 ("Salt Water Seafood" or "Store"), by and through undersigned counsel, pursuant to 7 U.S.C. §2023, 7 C.F.R. §279.7, and 5 U.S.C. §552(a)(4)(B), hereby file this Complaint against Defendants United States and United States Department of Agriculture ("USDA"), and alleges:

1.    This action seeks judicial review of the Final Agency Decision ("FAD"), dated March 11, 2019, issued by USDA's Food and Nutrition Service ("FNS"), which imposed a six month term disqualification on the Store's participation in Supplemental Nutrition Assistance Program ("SNAP"). This action also is brought based on USDA's violation of the Freedom of

Information Act ("FOIA") in connection with a FOIA Request submitted by Salt Water Seafood, dated May 9, 2018, relating to the Store's SNAP authorization.

## PARTIES

2.      Plaintiff Salt Water Seafood is a District of Columbia corporation with its principal place of business in this judicial district.  Plaintiff Salt Water Seafood operates a retail fish and seafood store at the Maine Avenue Fish Market, the nation's oldest continuously operating fish market.  Salt Water Seafood is a "Retail Food Store" as such term is defined in 7 C.F.R. §271.2.

3.      Defendant United States of America is the federal government.

4.      Defendant USDA is an executive branch department of the federal government.

5.      FNS is an agency of the United States Department of Agriculture ("USDA").

6.      FNS administers and has promulgated regulations governing the SNAP pursuant to powers delegated by Congress in Section 4 of the Food and Nutrition Act of 2008.  7 U.S.C. §2013.

7.      FNS is subject to the requirements of the FOIA and has an office that processes FOIA Requests and FOIA Appeals.

8.      In connection with FOIA Requests and FOIA Appeals, FNS is required to follow agency regulations codified in Part 295 of Title 7 of the Code of Federal Regulations.

9.      Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 40 million Americans and more than 120,000 Washingtonians.

10.     SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. §2011.

11.     Pursuant to SNAP regulations set forth in Part 278 of Title 7 of the Code of Federal Regulations, FNS has authority to authorize and disqualify retail food stores from participation in SNAP.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this *de novo* judicial review action of FNS's FAD pursuant to 7 U.S.C. §2023, 7 C.F.R. §279.7, and 28 U.S.C. §§1331, 1346.   This Court has also subject matter jurisdiction over this action pursuant to 5 U.S.C. §552(a).  This Court also has personal jurisdiction over the parties pursuant to 7 U.S.C. §2023 and 5 U.S.C. §552(a). Additionally, this Court has jurisdiction to grant declaratory and further necessary and proper relief pursuant to Federal Rules of Civil Procedure 57 and 65.

13.     Venue in this district is proper under 7 U.S.C. §2023 and 28 U.S.C. §§1391(b) and (e) because Salt Water Seafood, the retail food store that is the subject of this action, is located in the District of Columbia and within this judicial district, and because the United States of America is deemed a resident of this judicial district and has consented to suit in this judicial district in SNAP judicial review proceedings.  7 U.S.C. §2023(a)(13).  Venue is also proper in this judicial district pursuant to 5 U.S.C. §552(a)(4)(B).

14.     Salt Water Seafood has exhausted any and all administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

15.     Salt Water Seafood is a large fish and seafood market.

16.     At all times relevant hereto, Salt Water Seafood is and has been authorized by FNS to participate in SNAP as an authorized retailer.

17.     At all times relevant hereto, Salt Water Seafood has trained its employees regarding SNAP in accordance with FNS requirements.

18.     At all times relevant hereto, Salt Water Seafood properly supervised its employees, including regarding SNAP transactions and program requirements.

19.     Salt Water Seafood sells SNAP-eligible staple food items.

20.     All items sold at Salt Water Seafood are SNAP-eligible with the exception of crab mallets.

21.     Crab mallets are used to crack open blue crabs (also known as Maryland crabs).

22.     Crab mallets are not "common nonfood items."

23.     Salt Water Seafood sells crab mallets for one dollar apiece.

24.     No other SNAP-authorized retail food store in the vicinity carries as wide an array of fish and seafood at comparable prices.

25.     At all times relevant hereto, Salt Water Seafood is and has been authorized by FNS to redeem SNAP benefits. Salt Water Seafood's FNS-issued SNAP authorization number is 0427555.

26.     On August 18, 2017, FNS's Retailer Operations Division ("ROD") sent Salt Water Seafood a letter charging the Store with accepting SNAP benefits in exchange for common non-food items, in alleged violation of FNS's SNAP regulations contained at 7 C.F.R. §278.2(a) ("Charge Letter").

27.     The Charge Letter alleged that Salt Water Seafood sold crab mallets in exchange for ten dollars ($10.00) in SNAP benefits (EBT) on four occasions during November and December 2016 to an undercover FNS investigator.

28.     On August 31, 2017, Salt Water Seafood submitted its response to the Charge Letter.  Salt Water Seafood's response, *inter alia*, denied that it sold ineligible items in violation of FNS's SNAP regulations, requested issuance of a warning, and (in the alternative) requested that FNS assess a hardship civil monetary penalty ("Hardship CMP") in lieu of the term disqualification.

29.     On April 3, 2018, FNS issued its initial determination (Initial Determination").  In the Initial Determination, FNS "determined" that the alleged violations took place, declined to issue a warning or assess a Hardship CMP, and disqualified the Store from participation from SNAP for six months.

30.     The Initial Determination, which consisted of a two-page form letter, advised that FNS found that "the violations cited in our charge letter occurred at your firm."  The Initial Determination also denied Salt Water Seafood's CMP request because "[w]e have determined that you are not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

31.     On April 12, 2018, Salt Water Seafood timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

32.     On May 8, 2018, Salt Water Seafood filed a FOIA Request with FNS ("FOIA Request").  A copy of Salt Water Seafood's FOIA Request is attached hereto as Exhibit A.

33.     The FOIA Request sought five (5) categories of electronic and hard copy records, *inter alia,* relating to:

(1) Salt Water Seafood's SNAP authorization;

(2) FNS's Initial Determination;

(3) FNS's decision to deny Salt Water Seafood's Request for a CMP;

(4) Site visits conducted by FNS at Salt Water Seafood since January 2010; and

(5) Issuance of warnings to SNAP retailers based on the sale of ineligible items.

34.     On July 24, 2018, more than 20 working days after it received the FOIA Request, FNS responded to the FOIA Request. ("FOIA Response"). A copy of FNS's FOIA Response (without responsive records produced by FNS) is attached hereto as Exhibit B.

35.     FNS's FOIA Response advised that it uncovered only 174 pages of records responsive to the FOIA Request.

36.     With respect to Item 1 of the FOIA Request, FNS produced 96 pages in full and produced one additional page with redactions.  FNS advised that the redacted page was not produced pursuant to Exemptions 6 and 7(C) of the FOIA.

37.     With respect to Items 2 and 3 of the FOIA Request, FNS produced 22 pages in full and produced 33 additional pages with redactions.  FNS advised that the redacted pages were not produced pursuant to Exemptions 5, 6, 7(C), and 7(E) of the FOIA.

38.     With respect to Item 4 of the FOIA Request, FNS produced 12 pages in full and produced 13 additional pages with redactions.  FNS advised that the redacted pages were not produced pursuant to Exemptions 6 and 7(C) of the FOIA.

39.     With respect to Item 5 of the FOIA Request, FNS did not produce a single record (in whole or in part), failed to identify how many pages were being withheld in full, did not advise how it searched for responsive records, and did not produce any reasonably segregable portions of

any responsive records.  FNS withheld all records responsive to Item 5 in full pursuant to Exemption 7(E) of the FOIA.

40.     On October 19, 2018, Salt Water Seafood timely submitted its FOIA Appeal to FNS.  A copy of Salt Water Seafood's FOIA Appeal (without exhibits) is attached hereto as Exhibit C.

41.     On October 25, 2018, FNS's FOIA Office acknowledged receipt of Salt Water Seafood's FOIA Appeal and assigned it FNS tracking number 2019-FNS-00030-A.

42.     On November 30, 2018, Salt Water Seafood submitted its response in support of its Request for Administrative Review of the Initial Determination ("Salt Water Seafood's Response").

43.     Salt Water Seafood's Response requested that FNS's Administrative Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP.  Salt Water Seafood's Response was supported by declarations from Billy White, Salt Water Seafood's President, numerous declarations from its customers, and a price comparison chart demonstrating that its prices for staple food items were lower at other SNAP-authorized stores in the vicinity.

44.     On March 11, 2019, FNS Administrative Review Officer Mary Kate Karagiorgos issued the FAD.  A copy of the FAD is attached hereto as Exhibit D.  Salt Water Seafood, via counsel, received the FAD on March 15, 2019.

45.     In its FAD, FNS rejected all of Salt Water Seafood's arguments, notwithstanding the voluminous evidence submitted by the Store and affirmed the Initial Determination which imposed a six month term disqualification from SNAP upon Salt Water Seafood.

46.     The FAD rejected Salt Water Seafood's argument that crab mallets are not "common nonfood items," noting that "the word common is used to differentiate the penalty from other penalties . . . pertaining to the sale of expensive or conspicuous nonfood items, cartons of cigarettes, or alcoholic beverages."

47.     The FAD rejected Salt Water Seafood's argument that management of the Store was not careless and did not poorly supervise its employment, concluding that because the Store sold "ten mallets on four separate visits" that "[t]he evidence supports that the appropriate penalty is a six month disqualification."

48.     The FAD also rejected Salt Water Seafood's argument that a warning was appropriate because "the investigative report documented that ineligible items were exchanged for SNAP benefits on four separate occasions.  These violations are not considered 'violations that are too limited to warrant a disqualification.'"

49.     The FAD rejected Salt Water Seafood's argument regarding the substantial length of time between the investigation and the issuance of the charge letter, noting only that "the agency did not act improperly in issuing its charge letter."

50.     The FAD rejected Salt Water Seafood's argument that a CMP was appropriate, noting that "the Retailer Operations Division determined that a Hardship CMP would not be appropriate, as there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

51.     FNS has not, to date, issued a decision on Salt Water Seafood's FOIA Appeal.

52.     More than twenty (20) working days have passed since FNS received Salt Water Seafood's FOIA Appeal.

## FNS'S SNAP REGULATIONS

53.     Pursuant to 7 C.F.R. §278.6(e)(5), the penalty for a firm not previously sectioned for accepting SNAP benefits in exchange for "*common nonfood items due to carelessness or poor supervision*" is a six-month term disqualification from participation in SNAP. (emphasis added)

54.     FNS is required to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. §278.6(e)(7).

55.     Pursuant to FNS's regulation governing Hardship CMPs, 7 C.F.R. §278.6(f)(1), FNS is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION
## PURSUANT TO 7 U.S.C. §2023 AND 7 C.F.R. §279

56.     Plaintiff Salt Water Seafood repeats and re-alleges paragraphs 1 through 55 as if fully set forth herein.

57.     Salt Water Seafood denies the allegations in the Charge Letter.

58.     Salt Water Seafood did not sell any common nonfood items in exchange for SNAP benefits.

59.     At no time did Salt Water Seafood poorly supervise its employees.

60.     At no time did Salt Water Seafood act carelessly in permitting common nonfood items in exchange for SNAP benefits.

61.     FNS's six month disqualification of Salt Water Seafood from participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

62.     FNS's six month disqualification of Salt Water Seafood from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to consider all evidence related to the Store.

63.     FNS's six month disqualification of Salt Water Seafood from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

64.     FNS's six month disqualification of Salt Water Seafood from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at Salt Water Seafood resided.

65.     FNS's six month year disqualification of Salt Water Seafood from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to interview a single SNAP beneficiary whose EBT card was used at the store.

66.     FNS's six month year disqualification of Salt Water Seafood from participating in SNAP because FNS has no evidence that Salt Water Seafood poorly supervised its employees.

67.     FNS's six month year disqualification of Salt Water Seafood from participating in SNAP because FNS has no evidence that Salt Water Seafood acted carelessly in permitting the exchange of nonfood items for SNAP benefits.

68.     FNS's denial of Salt Water Seafood's request for a Hardship CMP was not rationally related to any legitimate governmental interest.

69.     FNS's denial of Salt Water Seafood's request for a Hardship CMP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

70.     FNS's failure to issue a warning to Salt Water Seafood based on the alleged sale of crab mallets worth ten dollars ($10) is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

71.     FNS's imposition of a six month term disqualification based on the alleged sale of crab mallets worth ten dollars ($10) is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

72.     FNS's denial of Salt Water Seafood's request for a Hardship CMP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

73.     FNS's denial of Salt Water Seafood's request for a Hardship CMP based, in whole or in part, upon circumstantial evidence represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

74.     At no time did FNS provide Salt Water Seafood with a warning that crab mallets are not eligible for the redemption of SNAP benefits prior to issuance of the Charge Letter.

75.     FNS should have provided Salt Water Seafood with a warning that crab mallets are not eligible for the redemption of SNAP benefits prior to issuance of the Charge Letter.

76.     FNS should have provided Salt Water Seafood with a warning that crab mallets are not eligible for the redemption of SNAP benefits after the first alleged violation.

77.     In the event that FNS provided Salt Water Seafood with a warning that crab mallets are not eligible for the redemption of SNAP benefits after the first alleged violation, no further violations would have occurred.

78.     In the event that FNS provided Salt Water Seafood with a warning that crab mallets are not eligible for the redemption of SNAP benefits after the first alleged violation, Salt Water Seafood would have re-trained its employees regarding SNAP requirements.

79.     Neither the Food and Nutrition Act of 2008 nor FNS's SNAP regulations define "common nonfood items."

80.     Crab mallets are sold at many SNAP retailers.

81.     FNS has no basis to have concluded that crab mallets are a "common nonfood item."

82.     A SNAP retailer charged with the exchange of common nonfood items is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other SNAP-authorized retail food stores in the vicinity selling as large a variety of staples at comparable prices.

83.     Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the variety of staple food products carried at Salt Water Seafood or any other SNAP-authorized retailer in the vicinity.

84.     Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at Salt Water Seafood or any other SNAP-authorized retailer in the vicinity.

85.     No other SNAP-authorized retailer sells as wide an array of fish and seafood items at comparable prices to those at Salt Water Seafood.

86.     FNS's decision to deny Salt Water Seafood's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items by other SNAP-authorized retailers in the vicinity.

87.     FNS's decision to deny Salt Water Seafood's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

88.     FNS's decision to deny Salt Water Seafood's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

89.     Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

90.     Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

91.     7 C.F.R. §278.6(f)(1) provides, in pertinent part, that "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items **at comparable prices**." (emphasis added)

92.     FNS, in issuing the FAD, relied upon records and other information in FNS's possession which were never provided to Salt Water Seafood despite requesting all such records in its FOIA Request.

93.     In its FAD, FNS relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

94.     FNS uses a one mile radius for determining whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP.

95.     FNS calculates distance "as the crow flies," not walking or driving distance when determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

96.     No factual support exists for FNS's decision to deny Salt Water Seafood's request for a Hardship CMP.

97.     FNS relied upon undisclosed analyses, including of other SNAP-authorized retail food stores, which were never provided to Salt Water Seafood.

98.     The FAD was not based upon any declarations or affidavits from a USDA or FNS employee or contractor whose identity was disclosed to Salt Water Seafood.

99.     The FAD is FNS's final administrative determination that its six month disqualification of Salt Water Seafood from participation as an authorized SNAP retailer was properly imposed.

100.    The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§2023(a)(13), (15).

101.    Judicial reviews pursuant to 7 U.S.C. §§2023(a) are not governed by the Administrative Procedure Act and the evidence is not limited to the administrative record prepared by FNS.

102.    The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's food stamp regulations.

103.    FNS incorrectly determined that Salt Water Seafood was not eligible for a Hardship CMP, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

104.    FNS's denial of Salt Water Seafood request for a Hardship CMP was premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. §278.6.

105.    In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Salt Water Seafood.

106.    Plaintiff respectfully requests a *de novo* review of FNS's FAD which affirmed the term disqualification of Salt Water Seafood from SNAP and determined that the alleged violations took place.

107.    Plaintiff respectfully requests a *de novo* review of FNS's FAD in which FNS affirmed the decision in the Initial Determination to decline to issue a warning.

108.    Plaintiff respectfully requests a *de novo* review of FNS's FAD which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.


WHEREFORE, Plaintiff Salt Water Seafood respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a)    Reversing the FAD;

(b)    Vacating FNS's Initial Determination;

(c)    Preliminarily enjoining FNS from disqualifying Salt Water Seafood from participating in SNAP during the pendency of this action;

(d)    Permanently enjoining FNS from denying Salt Water Seafood authorization to participate in SNAP based upon the Initial Determination and the FAD;

(e)    In the alternative, directing FNS to impose a Hardship Civil Monetary Penalty in an amount consistent with FNS's regulations;

(f)      Awarding Salt Water Seafood an amount equal to its reasonable attorneys' fees and

costs, including pursuant to the Equal Access to Justice Act; and

(g)      Such other and further relief as the Court may deem just and proper.


## COUNT II – VIOLATION OF THE FREEDOM OF INFORMATION ACT AGAINST DEFENDANT USDA

109.    Plaintiff repeats and re-alleges paragraphs 1 through 55 as if fully set forth herein.

110.     On May 9, 2018, Salt Water Seafood sent the FOIA Request to FNS requesting,

*inter alia,* records in the agency's possession relating to its SNAP authorization, FNS's Initial

Determination, and to certain FNS SNAP policies. *See* Exhibit A.

111.    On May 10, 2018, FNS acknowledged receipt of the FOIA Request and assigned it

tracking number 2018-FNS-03994-F.  FNS's acknowledgement letter advised that it had a target

response date of June 7, 2018.

112.    On July 24, 2018, more than six weeks after its target response date, FNS responded

to the FOIA Request. *See* FOIA Response, attached hereto as Exhibit B.

113.    In its FOIA Response, FNS produced redacted portions of numerous records based

on Exemptions 5, 6, 7(C), and 7(E) and withheld all records relating to policy memoranda,

handbook provisions, correspondence, and all other records relating to the portion of Salt Water

Seafood's request for records regarding the "issuance of warnings to SNAP retailers based on

warnings to SNAP retailers based on the sale of ineligible items.

114.    FNS's assertion of Exemptions 5, 6, 7(C), and 7(E) is part of a pattern and practice

designed to prevent the public from discovering all records relating to FNS's administration of the

SNAP retailer program and relating to SNAP retailer administrative proceedings.

115.    Little or no information about FNS's administration of its SNAP retailer program is known to the public or to Congress.

116.    FNS's administration of its SNAP retailer program has been termed by some as a "black box" and its treatment of SNAP retailers charged with program violations as "Kafkaesque."

117.    FNS's pattern and practice of asserting Exemptions 5, 6, 7(C), and 7(E) without having a proper basis is used by the agency to prevent retailers charged with SNAP program violations from uncovering information in its possession that FNS uses against them in administrative proceedings.

118.    All of the information withheld by FNS pursuant to Exemption 5, 6, 7(C), and 7(E) are available to a retailer seeking judicial review in the context of Initial Disclosures and/or routine discovery requests.

119.    FNS routinely asserts that it is a law enforcement agency when responding to FOIA Requests.

120.    FNS is not a law enforcement agency.

121.    FNS officials and employees do not have powers of arrest.

122.    FNS officials and employees cannot charge individuals or companies with criminal charges, including felonies and misdemeanors.

123.    FNS did not conduct a proper search for records responsive to Salt Water Seafood's FOIA Request.

124.    No SNAP retailer has even been charged with a crime for selling crab mallets for EBT.

125.    FNS withheld responsive records without a legitimate and proper basis for asserting each exemption set forth in the FOIA Response.

126. On October 19, 2018, Salt Water Seafood submitted its administrative appeal of FNS's FOIA Response.

127. In its October 25, 2018, acknowledgement letter, FNS advised that its decision on the FOIA Appeal has a target response date on November 20, 2018.

128. To date, FNS has not issued a decision on Salt Water Seafood's FOIA Appeal, notwithstanding the passage of more than twenty (20) working days since submission of its FOIA Appeal and the requirement in the FOIA to issue a decision within such time period.

129. Salt Water Seafood has exhausted all applicable administrative remedies with respect to its FOIA Request to FNS prior to seeking judicial review thereof.

130. FNS has wrongfully withheld records requested by Salt Water Seafood in violation of the FOIA by failing to search for all responsive records.

131. FNS has wrongfully withheld records requested by Salt Water Seafood in violation of the FOIA by asserting inapplicable exemptions, including Exemptions 5, 6, 7(C), and 7(E).

132. FNS has a policy and practice of failure to comply with the time requirements set forth in FOIA, including with respect to FOIA Appeals.

133. FNS issued only 9 FOIA Appeal decisions during Fiscal Year 2016.

134. FNS issued only 97 FOIA Appeal decisions during Fiscal Year 2017.

135. During Fiscal Year 2018, FNS received 342 additional FOIA Appeals, while issuing only 89 FOIA Appeal decisions.

136. FNS currently has a backlog of more than 650 FOIA Appeals.

137. While FNS's target dates are designed to comply with the FOIA, the agency has more than 98% of the time failed to timely comply with FOIA's mandatory time requirements with respect to timely FOIA Appeals submitted by SNAP retailers charged with program violations.

138.   It will take more than three years for FNS to process all currently pending FOIA Appeals.

139.   FNS intentionally underfunds its FOIA Office in order to prevent the public from discovering what the agency is up to.

WHEREFORE, Plaintiff Salt Water Seafood respectfully requests that this Court enter judgment in its favor based on the and against the United States, and issue an Order granting the following relief:

(a)   Declaring that FNS violated the FOIA by failing to timely respond to Plaintiff's FOIA Request;

(b)   Declaring that FNS violated the FOIA by failing to timely issue a decision on Plaintiff's FOIA Appeal;

(c)   Declaring that Salt Water Seafood substantially prevailed on this count based on FNS's violation of the FOIA;

(d)   Declaring that FNS violated the FOIA by improperly asserting Exemption 5;

(e)   Declaring that FNS violated the FOIA by improperly asserting Exemption 6;

(f)   Declaring that FNS violated the FOIA by improperly asserting Exemption 7(C);

(g)   Declaring that FNS violated the FOIA by improperly asserting Exemption 7(E);

(h)   Ordering FNS to produce all records withheld in full;

(i)   Ordering FNS to produce all records withheld in part;

(j)   Ordering FNS to conduct a comprehensive search for all records, including e-mails, not produced to Salt Water Seafood;

(k)   Ordering FNS to produce a *Vaughn* index of all records withheld in full or in part;

(l)     Conducting an *in camera* review of all records withheld in full or in part;

(m)    Awarding Salt Water Seafood an amount equal to its reasonable attorneys' fees and

costs, including pursuant to the FOIA and the Equal Access to Justice Act; and

(n)    Such other and further relief as the Court may deem just and proper.


                    Respectfully submitted this 3rd day of April 2019.


            By:    /s/ Stewart D. Fried
                   Stewart D. Fried, Esq.
                   D.C Bar No. 457801
                   Olsson Frank Weeda Terman Matz PC
                   2000 Pennsylvania Avenue, N.W., # 3000
                   Washington, D.C. 20006
                   (202) 518-6326 – Direct Dial
                   (202) 234-3550 – Facsimile
                   sfried@ofwlaw.com

                   Attorneys for Plaintiff Salt Water Seafood